UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANTE D. GUY, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL *et al.*, <br><br> Defendants. | CAUSE NO. 3:22-CV-312-DRL-JEM |

OPINION AND ORDER

Dante D. Guy, a prisoner without a lawyer, filed an amended complaint against five defendants alleging they violated his Eighth Amendment rights when they failed to protect him from inmates assaulting him and provided inadequate medical care following that attack. ECF 4. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Guy alleges that, on April 21, 2020, the officer in charge of C Cellhouse at the Indiana State Prison (ISP), where he was housed in cell 523 West, failed to secure his cell and, as a result, gang members were able to enter his cell and assault him. ECF 4 at 3-4.

Following the assault, Mr. Guy was rushed to the hospital where he underwent surgery for a stab wound. *Id*. at 3.

During his hospitalization, the doctor told Mr. Guy he had a broken nose and would need to return to the hospital in seven to eleven days after his swelling subsided so he could reposition Mr. Guy's nose. *Id*. The doctor also indicated he would check Mr. Guy's lungs and breathing function related to his stabbing injury when he returned to the hospital. *Id*. After being hospitalized for three days, Mr. Guy returned to ISP on April 24, 2020. *Id*.

On May 1, 2020, at about 2:07 a.m., Mr. Guy's nose began to bleed while he was sleeping. *Id*. After his nose bled continuously for fifteen minutes, he asked a G-dorm floor officer if he could see Wexford's medical staff. *Id*. After waiting two hours for Wexford's medical staff to respond, he asked the G-dorm floor officer if he knew why it was taking so long for a nurse to come and examine him. *Id*. at 3-4. The G-dorm floor officer told him the medical staff wanted him to pinch his nose and keep his head back to control the bleeding. *Id*. at 4. Mr. Guy asserts that his nose bled for over thirteen hours without a nurse aiding him. *Id*.

On May 7, 2020, Mr. Guy asserts that Wexford's medical staff would not permit him to return to the hospital so that the doctor there could reposition his nose and check his lung and breathing function. *Id*. Also, on that day, Internal Affairs Officer Burke interviewed Mr. Guy about the April 21, 2020, assault. *Id*. During the interview, Officer Burke told Mr. Guy that the inmate who stabbed him was a gang member and listed on the facility's Security Threat Group (STG). *Id*.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As the Seventh Circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted).

In this case, Mr. Guy has sued five defendants. He has sued the Officer in Charge of C Cellhouse, asserting that the officer was deliberately indifferent to his safety because the officer failed to secure his cell on April 21, 2020, allowing gang members to enter his cell and assault him. ECF 4 at 4. However, Mr. Guy has not alleged facts that show the Officer in Charge of C Cellhouse knew that gang members planned to attack him and did

3

nothing to prevent the attack. "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). Though the assault on Mr. Guy was a tragic event, he has not alleged that the actions of the Officer in Charge of C Cellhouse amounts to anything more than negligence. Therefore, Mr. Guy has not stated a claim.

Next, Mr. Guy has sued Internal Affairs Officer Burke alleging that he was deliberately indifferent to his safety because Officer Burke knew certain inmates were violent gang members, who were listed on the facility's STG but did nothing to restrict their movement within the prison. ECF 4 at 5. However, Mr. Guy has not alleged facts that show Officer Burke was aware that certain inmates posed a substantial risk of harm to Mr. Guy's safety but failed to take appropriate steps to protect him from that specific danger. Therefore, Mr. Guy may not proceed against Officer Burke.

Mr. Guy has also sued Warden Ron Neal and the Captain of C Cellhouse. He asserts these two defendants were deliberately indifferent to the serious risks posed by the gang members because they did not implement appropriate safety measures to protect inmates. ECF 4 at 4-5. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn

4

a blind eye." *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Here, Mr. Guy has not alleged facts from which it can be plausibly inferred that either Warden Neal or the Captain of C Cellhouse facilitated, approved, condoned, or turned a blind eye toward unconstitutional acts that caused Mr. Guy's injury. Thus, he has not stated a claim against these two defendants.

Last, Mr. Guy has sued Wexford Medical. ECF 4 at 3-4. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a

5

judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotations and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."); *Estelle v. Gamble*, 429 U.S. at 106 (negligence or medical malpractice do not constitute deliberate indifference). Even incompetence does not state a claim for deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Furthermore, inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Mr. Guy cannot proceed on his claim against Wexford Medical, the private company that employed medical staff at ISP at the time of these events. ECF 4 at 3-4. There is no general *respondeat superior* liability under 42 U.S.C. § 1983 and Wexford cannot be held liable solely because it employed the medical staff involved in Mr. Guy's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). Because Mr. Guy's amended complaint against Wexford Medical is based only on Wexford's medical staff's lack of treatment, he has not stated a claim against Wexford Medical.

The amended complaint does not state a claim for which relief can be granted. If Mr. Guy believes he can state a claim based on (and consistent with) the events described

in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, Mr. Guy needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form that is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Dante D. Guy until **May 24, 2023**, to file an amended complaint; and

(2) CAUTIONS Dante D. Guy if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

April 25, 2023                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court